# Jurisdiction and Procedure of the Office of the Assistant Solicitor General

This memorandum summarizes the authorities and internal operating rules for the Office of the Assistant Solicitor General, the predecessor entity within the Department of Justice to the Office of Legal Counsel. Although the litigation functions have largely been shifted to other components, many of the other practices and procedures described in this memorandum (in particular, preparation of opinions and review of executive orders) remain in place to the present day.

June 1, 1939

MEMORANDUM FOR THE OFFICE OF THE ASSISTANT SOLICITOR GENERAL

In the belief that it will be of assistance to this office both now and in the future to have in written form an outline of its jurisdiction and procedure, I am setting down the matters which now are assigned to it and the manner in which they are now handled. Of course, hereafter the assignments to the office may be increased or decreased and it may be found advantageous to make changes in the present procedure of the office; but a description of the present jurisdiction and practice will be useful as a basis for future action—particularly for successors to me and additions to the staff of the office.

## I.

### Procedure in Handling Special Assignments

The act creating the office of the Assistant Solicitor General (Independent Offices Appropriation Act, 1934, Pub. L. No. 73-78, § 16, 48 Stat. 283, 307–08 (June 16, 1933), *codified at* 5 U.S.C. § 293a (1934)) provides that he is to assist the Solicitor General in the performance of his duties and perform such additional duties as may be required of him by the Attorney General. By Departmental Order 2507 of December 30, 1933, it was provided that the Department should consist, among others, of the Office of the Assistant Solicitor General, and its functions were set forth in Exhibit A accompanying that order as:

> 1. Such matters (including briefs and arguments in the Supreme Court) as may be assigned by the Solicitor General.
>
> 2. Executive orders.
>
> 3. Compromises.
>
> 4. Preparation of opinions.
>
> 5. Special assignments by the Attorney General.

It will be noted that divisions 1 and 5 comprehend assignments of any character upon which either the Attorney General or the Solicitor General desires assistance. Divisions 2 (which comprehends also proclamations), 3, and 4 are more specific and the procedure in handling those matters will be indicated under separate headings. Because the assignments under 1 and 5 are so miscellaneous in character, it is impossible here to do more than mention some that are more or less typical. In general the office procedure and mechanics indicated under the other headings cover that applicable to these two.

A standing assignment from the Solicitor General is the preparation of recommendations by this office to him for or against the taking of appeals from the United States Customs Court to the Court of Customs and Patent Appeals; this assignment will be handled under a separate heading hereafter. *See infra* Part VI.

A standing assignment from the Attorney General is the handling of gifts, bequests, and devises to the United States, and this also will be handled under a separate heading hereafter. *See infra* Part VII.

In April 1936 the Attorney General began sending to this office for its recommendation for or against allowance of claims presented under the Trading with the Enemy Act, as amended, for the return of property seized by the Alien Property Custodian during the World War. Since Executive Order 8136 of May 15, 1939, 3 C.F.R. 500 (1938–1943), however, these claims rarely go through this office.

***Acting Attorney General.*** By Departmental Order 2860 of June 20, 1936, the Assistant Solicitor General is Acting Attorney General in the absence of the Attorney General and the Assistant Attorneys General.

***Acting Solicitor General.*** By Departmental Order 2869 of July 7, 1936, in the absence of the Solicitor General, the Assistant Solicitor General is Acting Solicitor General.

***Supreme Court Cases.*** From time to time the Solicitor General may assign to this office the preparation and argument of cases in the Supreme Court. Generally the briefs in such cases have been prepared in the division which has handled them in the lower courts and reviewed by a member of the Solicitor General's staff. Sometimes opportunity is afforded in cases assigned to the Assistant Solicitor General for argument to revise the briefs before they are printed, in which event this office makes such changes as it deems desirable if approved by the Solicitor General. The Assistant Solicitor General argues the cases personally unless assigned by the Solicitor General to a member of the staff of this office. He is assisted in the preparation for argument by such members of the staff of this office or of that of the Solicitor General's as he may call upon.

***Intradepartmental Opinions.*** Requests frequently are received from the Attorney General, the Solicitor General, or the heads of the respective divisions or bureaus for opinions presented in the administration of this Department. Sometimes the President may desire informal advice and either a memorandum prepared in this office directed to the Attorney General or in blank is transmitted to the

President with a covering communication from the Attorney General, or the Attorney General orally advises on the basis of such memorandum. When such matters are received in this office, they are assigned to one or more of its attorneys who prepare the required memoranda for transmission by the Assistant Solicitor General.

*Committees.* The Assistant Solicitor General or members of his staff sometimes are appointed to represent the Attorney General on committees of various kinds. In such event they attend committee meetings and actively assist in their work.

*Preparation of Proposed Legislation.* Sometimes the Attorney General calls upon this office to draft or to assist interested departments or agencies to draft legislation to be submitted to the Congress.

## II.

### Procedure in Handling Proposed Executive Orders and Proclamations

*Authority of the Attorney General for Considering Proposed Executive Orders and Proclamations.* Executive Order 7298 of February 18, 1936, requires that all executive orders and proclamations be submitted to the Attorney General for his consideration as to form and legality before submission to the President. This order superseded Executive Order 6247 of August 10, 1933, which contained a similar provision.

*Reference to the Attorney General.* Paragraph 2 of the said Executive Order 7298 provides that proposed executive orders and proclamations shall first be submitted to the Director of the Bureau of the Budget and that after he approves them he shall transmit them to the Attorney General for his consideration. The Attorney General has assigned the function of considering proposed orders and proclamations to the Office of the Assistant Solicitor General.

*File Numbers.* Upon receipt of the proposed order or proclamation in the Office of the Attorney General it is sent to the Division of Records, where it is given the proper file number and then transmitted to this office. If the order is deemed urgent, it is sent directly to this office from the Attorney General's office, and is not given a file number until after it has been disposed of. In any event, however, the order is given preferred attention in the Division of Records and is sent to this office as expeditiously as possible.

*Preliminary Examination.* The attorney in this office to whom the order or proclamation is assigned examines the order as soon as he receives it to determine how expeditiously it should be handled. Frequently after it is received in the Department of Justice the presenting agency requests that it be given preferred attention in this Department so that it may reach the White House as soon as possible. All proposed orders and proclamations are handled as promptly as possible whether considered urgent or not.

***Views of Other Officers.*** In some cases, because of the nature or subject matter of the order, it is referred to another division or divisions in the Department for their views and recommendations. This is particularly true in regard to orders involving public land, such orders being occasionally referred to the Lands Division. In other cases, because of doubtful legal questions involved, the head of the presenting department or agency is requested to furnish an opinion of its chief law officer as to the legality of the order or proclamation.

***Consideration and Revision.*** In accordance with the requirements of Executive Order 7298, this office considers proposed orders and proclamations as to both form and legality. It is first determined whether the order is legally authorized. If it is found to be without sufficient legal authority, the presenting agency is informally notified of the Department's views and consideration is given to the question whether the order can be modified so as to eliminate the legal objections. If this cannot be done so that it is satisfactory to the presenting agency, the order is either withdrawn by the presenting agency or returned with a letter of the Attorney General setting forth the legal reasons why the order cannot be approved.

If the order is found to be legally unobjectionable there is for determination the question whether it should be revised as to form. It has been found that in the vast majority of cases revision as to form and language is necessary, although the order may be without legal objection. Section 1 of Executive Order 7298 provides that proposed orders and proclamations shall be prepared in accordance with certain formal requirements, for example, the authority under which it is issued must be cited, it must be typewritten on paper of a certain size, and matters of style (punctuation, capitalization, spelling, etc.) must conform to the Government Printing Office style manual. The instrument is revised to conform to these more or less mechanical requirements. However, the most important function in revision is to give the order or proclamation the proper language and structure. The aim is to make it clear and unambiguous by conforming it to all the principles of good writing and good composition. Generally, revisions in form are made without consultation with or the consent of the presenting agency; in some cases, however, the changes are so extensive that the revision is referred informally to the presenting agency for its approval. In no case is a change made in the substance of the order without the approval of the presenting agency.

***Submission to the Attorney General.*** After the proposed order or proclamation has been properly revised, in case revision is necessary, it is submitted, with four carbon copies thereof (three of which accompany the original to the White House), to the Attorney General by memorandum of the Assistant Solicitor General, which, ordinarily, contains a description and explanation of the order and a citation and discussion of the law under which the order is authorized. Accompanying the memorandum to the Attorney General is a draft of a transmittal letter to the President for the signature of the Attorney General if the order is approved by him. This letter ordinarily contains an explanation of the order and states that it is approved as to form and legality.

*Opinions.* In a considerable number of cases where difficult points of law are involved the Attorney General in his letter to the President expresses his opinion in some detail on the legality of the order—such opinions being similar in all essential respects to opinions expressly requested of the Attorney General by the President. Such opinions may or may not be published, according to the general principles governing the publication and non-publication of opinions of the Attorney General.

*Transmission to Mail Room.* When the transmittal letter to the President is signed by the Attorney General, it is sent, together with the memorandum and the proposed order, to the mail room for proper recordation. In accordance with the said Executive Order 7298 it is then transmitted to the Division of the Federal Register, National Archives, which in turn forwards it to the White House. In some urgent cases the proposed order is brought to this Department by a representative of the Bureau of the Budget, who desires to carry the order to the White House after it is approved by the Attorney General and the Division of the Federal Register. In such cases the order is returned to this office by the office of the Attorney General and then delivered to the representative of the Bureau of the Budget.

*Publication and Printing.* In conformity with the requirements of the Federal Register Act approved July 26, 1935 (Pub. L. No. 74-220, § 5(a)(1), 49 Stat. 500, 501), all executive orders and proclamations having general applicability and legal effect are published in the Federal Register. All other orders and proclamations are printed and copies thereof furnished this office.

*File and Index.* The chief attorney of this office maintains a complete file of all proposed Executive orders and proclamations handled by this office, together with copies of all memoranda to the Attorney General and transmittal letters to the President. Such correspondence is filed in loosely bound volumes, each volume containing the correspondence for one calendar month. In addition, the chief attorney maintains a separate record of all proposed executive orders and proclamations submitted by this office to the Attorney General. A topical index of all proposed executive orders and proclamations handled by this office is being prepared under the direction of, and will be maintained by, the chief attorney.

*Informal Submission to this Office.* In a considerable number of cases proposed orders or proclamations are informally submitted for the consideration of this office either as to form or legality, or both. As an accommodation to and for the convenience of the presenting agency, an attorney of this office revises the draft so submitted or suggests changes therein. In some cases, also, this office is informally requested to draft or aid in the drafting of a proposed order or proclamation before its formal submission.

## III.

## Procedure and Jurisdiction in Handling Offers in Compromise

***Thoroughness and Expedition.*** In the handling of offers in compromise the primary purpose of the Department is to act for the best interests of the United States. Final action on offers in compromise should be expedited as much as possible, always consonant, of course, with thorough and careful consideration of the facts and the law involved. Expedition benefits both the government and the citizen.

***Order of Procedure.*** When an offer in compromise is received in the Department to pay the government an amount in satisfaction of a claim by it, or to accept from the government an amount in satisfaction of a claim against it, the offer is referred to the division or bureau in the Department which handles that type of case. There it is studied and further investigated if necessary. Then the offer is transmitted to the Assistant Solicitor General with the file and the recommendation of the head of the division or bureau for acceptance or rejection of the offer. In the office of the Assistant Solicitor General the case is assigned to an attorney for careful review. If the case is complicated, or there is doubt respecting the recommendation, frequently it is reviewed in the Assistant Solicitor General's office by more than one attorney. Then it is submitted to the Assistant Solicitor General with the recommendation or recommendations of the reviewer or reviewers and he either accepts or rejects the offer or makes his recommendation to the Attorney General, depending on the amounts involved as hereinafter noted. If within the final jurisdiction of the Assistant Solicitor General, his office then transmits it back to the division or bureau from which it came. If the amounts bring the case within the Attorney General's exclusive jurisdiction, after he has acted on the Assistant Solicitor General's recommendation, the case is referred back to the division in which it originated through the Assistant Solicitor General's office, in order that it may be advised of the action of the Attorney General.

***Recommendations of U.S. Attorneys, etc.*** If an offer in compromise grows out of a case pending in the office of a United States Attorney, it is usually referred to that official for his recommendation. In war risk insurance cases the United States Attorney's recommendation is required by statute. It is also customary, with the exception of war risk insurance cases, to refer the case to the department or bureau in which it originated for comment on the offer. Although this Department is not bound by the recommendations of other departments or bureaus, careful consideration is given to their recommendations.

***Tenders with Offers.*** In any case involving a claim in favor of the United States, the amount offered in compromise should be submitted with the offer. Occasionally the Department accepts an offer which is to be paid on the installment basis. In such cases it is desirable that the installment payments should not be

extended over a period of more than one year. Unless the full amount of an offer is paid at the time of acceptance, suits are not dismissed and judgments are not entered as satisfied on the record until the full amount of the offer has been paid.

***Jurisdiction of the Assistant Solicitor General.*** By Departmental Order 2873 of July 14, 1936, the Attorney General authorized the Assistant Solicitor General to take final action on offers in compromise in cases involving claims in favor of the United States not exceeding $50,000 and in cases involving claims against the United States where the amount of the proposed settlement does not exceed $10,000. By the same order the Attorney General authorized United States Attorneys to compromise directly Indian claims and security and farm credit loan claims in cases not exceeding $500 upon the recommendation of the Superintendent of the local Indian agency or the local representative of the administration which made the loan, respectively. In all other cases action by the Attorney General is required.

***Attorney General's Compromise Power.*** The authority of the Attorney General to compromise claims in favor of and against the United States is derived in part from statutes and in part from the inherent power in the office. The power to compromise granted to the Secretary of the Treasury and other officers under the provisions of such statutes as sections 3229 and 3469 of the Revised Statutes (2d ed. 1878), 18 Stat. pt. 1, at 620, 688 (repl. vol.); section 617 of the Tariff Act of June 17, 1930, Pub. L. No. 71-361, 46 Stat. 590, 757; and section 9 of the Suits in Admiralty Act of March 9, 1920, Pub. L. No. 66-156, 41 Stat. 525, 527–28, was transferred to the Attorney General in connection with any case referred to the Department of Justice by Executive Order 6166 of June 10, 1933. Thus, once a case is referred to the Department of Justice for action, the power to compromise that case is vested in the Attorney General regardless whether some other officer had power to compromise it prior to the reference. The Attorney General has direct statutory power to compromise yearly term war risk insurance cases after suit has been instituted under the Act of June 16, 1933, Pub. L. No. 73-78, 48 Stat. 283, 302, as amended by the Act of February 24, 1938, 52 Stat. 81 (codified at 38 U.S.C. § 445(b)), and also suits brought under the Public Vessels Act, Pub. L. No. 68-546, 43 Stat. 1112 (codified at 46 U.S.C. § 786). The Attorney General under his broad primary power also has authority to compromise any case which has been referred to him for litigation and matters germane thereto. *See Compromise of Claims Under Sections 3469 and 3229 of the Revised Statutes—Power of the Attorney General in Matters of Compromise*, 38 Op. Att'y. Gen. 98 (1934) (Cummings, A.G.).

***Basis for Acceptance.*** Claims in favor of or against the United States cannot be compromised unless there is a sufficient basis for such action. Mere considerations of equity, hardship, sympathy, etc. do not furnish such a basis. In cases involving claims by the United States to justify compromise it must be shown (1) that a judgment in all probability cannot be recovered, or (2) that a judgment, if recovered, in all probability cannot be collected. The question whether a judgment can

be recovered usually depends upon legal or factual considerations. If the law as laid down by the courts is contrary to the government's contentions or if the government does not have the requisite testimony to prove its case within a reasonable certainty, there is sufficient doubt as to the ability of the government to recover a judgment to justify compromise. If there is little or no doubt that the government can recover a judgment, compromise can only be made when it appears improbable that more than the amount offered can be collected. In cases involving insolvent defendants, the government has the right of priority under the provisions of section 3466 of the Revised Statutes (2d ed. 1878), 18 Stat. pt. 1, at 687 (repl. vol.), and if the defendant's property is not covered by prior liens, the government under its right of priority may be able to collect even though he is insolvent. However, as against insolvent banks, the government may not collect tax claims if to do so will diminish the assets necessary to pay the depositors. *See* 12 U.S.C. § 570.

With reference to claims against the United States, the only question to be considered is whether the United States can successfully defend, since in such cases there is no question of collectibility. Claims against the United States may not be compromised without express statutory authority unless there is an appropriation available to pay them. Ordinarily claims against the United States are not compromised by the Department until suit has been instituted. The statutes which expressly authorize the Attorney General to compromise so provide. In other cases the claims are not referred here until suit has been instituted. *See* Annual Report of the Attorney General, 1938, at 77.

***Criminal Cases.*** Criminal cases may not be compromised without express statutory authority. The only class of criminal cases which Congress has authorized government officers to compromise are those arising under the Internal Revenue laws. *See* section 3229 of the Revised Statutes; section 7 of the Federal Alcohol Administration Act, Pub. L. No. 74-401, 49 Stat. 977, 985–86 (codified at 27 U.S.C. § 207). In connection with income, gift, and estate tax cases, the policy of the Department is not to accept money in compromise of criminal liability. If the case is one where successful prosecution is unlikely, the case may be compromised by payment of an amount not less than the government could otherwise collect. If the case is one wherein prosecution is likely to be successful, the Department will accept only the maximum amount of the taxes, penalties, and interest which the taxpayer can pay, together with a plea of guilty or *nolo contendere*. After compromise the case is submitted to the court by the United States Attorney without any recommendation for or against leniency. In connection with minor liquor tax violations, the Department accepts amounts of money in compromise of criminal liability in appropriate cases. *See* Annual Report of the Attorney General, 1938, at 76, 92, 200.

***War Risk Insurance Cases.*** As heretofore stated, the Attorney General is authorized by law to compromise any suit brought under the provisions of the World War Veterans' Act, 1924, Pub. L. No. 68-242, 43 Stat. 607 (as amended), on a

contract of yearly renewable term insurance, upon the recommendation of the United States Attorney charged with the defense, for sums within the amount claimed to be payable. The maximum face value of such a contract is $10,000. This authority does not extend to suits brought on converted policies. The Veterans Administration's files in cases recommended by the United States Attorney for acceptance are referred to the Bureau of War Risk Litigation for use of the Director in preparing his recommendation to the Assistant Solicitor General upon the merits of the claim. Since the plaintiffs in these suits are entitled to trial by jury, each case is examined, after investigation by the Federal Bureau of Investigation, to determine whether plaintiff has sufficient evidence to make a prima facie case for a jury and whether such evidence is sufficient to support a verdict. In those cases where it appears that plaintiff can get his case to a jury and it seems probable that a verdict would be returned in his favor, the compromise offer, if reasonable, is accepted. Action by the Assistant Solicitor General for the Attorney General is final, unless the amount to be paid out exceeds (as is rarely the case) $10,000. Where acceptance is indicated, the Assistant Solicitor General signs a written consent to enter judgment. The case is then referred back to the United States Attorney for entry of judgment against the United States. *See* Annual Report of the Attorney General, 1938, at 202.

*Note.* Assistant Solicitor General Bell discussed the general subject of compromise before a conference of United States Attorneys in Washington on April 21, 1939. That discussion is to be printed and reference may be made to what was then said by him and the heads of other divisions and bureaus on the subject.

## IV.

### Procedure in Handling Opinions

*Prime Purpose.* In the preparation and publication of opinions requested by the President and the heads of the executive departments, including the Veterans Administration, the following steps ordinarily are taken in the order in which they are set forth; but this detail and routine is not permitted to interfere with the accomplishment of the prime purpose—the prompt preparation of well considered opinions.

*Weekly Report.* The weekly report of this office to the Attorney General should show file numbers and (l) all opinions completed and sent to the Attorney General during the week; (2) all opinions transmitted to the Chief Clerk for publication; and (3) all opinion requests pending, from whom and when received, when acknowledged, present status and the estimated date of completion. (For form see previous weekly reports.)

*File Numbers.* Requests for opinions are routed to the Assistant Solicitor General, sometimes directly from the Attorney General's office and sometimes through the Division of Records. In the latter case, file numbers are assigned by

the Division of Records. If no file number has previously been assigned, the papers are forwarded to the Division of Records for this purpose.

*Acknowledgment.* If an opinion is to be rendered but cannot immediately be prepared because of the necessity for study, etc., an acknowledgment of the request should be made without delay.

*Unauthorized Requests.* If the request is from an officer or other person not authorized by law to require opinions of the Attorney General, a letter is prepared acknowledging the request and then stating, with such variations as the case and courtesy may require:

> The Attorney General is authorized by statute to give opinions only to the President and the heads of the executive departments. He would like to be of service to you but I am sure you will feel, as he does, that he ought not depart from the prevailing practice.

It is the practice, however, to supply any helpful information that may be available, particularly if the request is from a member of the Congress; and if the request is from the head of an independent establishment other than the Veterans Administration (which is authorized by law to obtain opinions) the suggestion is often made, either within the letter or otherwise informally, that under established practice opinions required for the guidance of the independent establishments may be requested by the President, if he deems it proper, upon suggestion from the agency concerned.

*Questions upon Which Opinions Not Rendered.* If the request is from an officer authorized to obtain opinions it is considered and determined, under the principles laid down by the Attorneys General regarding the non-rendition of opinions in certain circumstances, whether the question is moot, pending in court, etc. The circumstances may be such, moreover, as to require an opinion showing the reasons why the opinion asked should not be rendered. A controlling principle in this connection, however, is that if the officer is charged or confronted with the duty of taking some present step or making some present determination he is entitled to whatever advice the Attorney General can furnish to guide him, although it may not amount to a categorical opinion upon the precise question of law involved. (For illustrations, see Exhibit A annexed.)

*Views of Chief Law Officer.* If additional information is required or if the views of the chief law officer of the affected department have not been furnished in accordance with the established practice, this information is requested in the letter of acknowledgment. The practice is reflected by the following: letters of October 15, 1906, signed by Acting Attorney General Purdy, and September 15, 1924, signed by Attorney General Stone, addressed to the heads of the executive departments and independent establishments; printed "instructions" (not dated) issued from the White House in 1918, addressed "to those who (though otherwise not entitled to an opinion) have asked the President to secure an opinion from the

Attorney General," directing that "if there is a law clerk or officer, or person acting as such, for the officer or board seeking the submission, his opinion, covering the entire subject, with complete data . . . should accompany the inquiry." Special Opinion Rules, Dep't File No. 19-012. Also see the more recent letter of March 6, 1939, addressed to the Administrator of Veterans Affairs. Dep't File No. 19-33-64.

*Views of Other Officers.* It is also considered at this time whether the views of any other department or officer are necessary or would be helpful; if so, letters to them asking their views are prepared and the officer requesting the opinion so advised. Frequently the requesting officer or his staff is orally consulted for further light on the request.

A memorandum is also prepared requesting the views of the Assistant Attorney General or other officer of this Department concerned in the subject matter or apparently in a position to afford helpful assistance.

*Preliminary Study.* Study in this division of the question involved is undertaken as promptly as possible, and is not deferred pending receipt of views and information requested as above pointed out save only when and to the extent that the exigencies require. In some cases tentative drafts of opinions are prepared in advance of the receipt of such information and views.

*Preparation of Opinion.* As promptly as possible the attorney to whom the matter has been assigned prepares (in rough draft or final form, depending upon the exigencies) a completed draft of an opinion. In connection therewith he may, and frequently does, consult the Assistant Solicitor General and other members of the staff. When the draft is completed it is turned over to the Assistant Solicitor General and by him carefully studied and subjected to such revision as he finds proper. Frequently, and particularly in connection with questions that are difficult or of major import, the Assistant Solicitor General obtains the independent views of several or all the members of the staff. At times tentatively finished drafts may be submitted to officers of the Department and other divisions for their comments or suggestions. In some cases the general views of the Attorney General are obtained preliminarily through the submission of memoranda, rough drafts or conferences.

*Avoidance of Conflicts with Briefs.* Special effort is made to avoid conflicts with positions taken by the Department in briefs filed in the courts. The Solicitor General and members of his staff are consulted informally to such extent as the exigencies warrant and in particular cases the completed draft of the opinion is submitted to the Solicitor General before it is forwarded to the Attorney General. Also, the Solicitor General is furnished a copy of the weekly report with red-penciled references to the completed and pending opinions listed therein.

*Uniformity in Citations, Capitalization, etc.* In order to achieve greater uniformity and to obviate changes in the copy for the printer, all attorneys and stenographers have been instructed to adhere rigidly to the Government Printing Office style manual in the matter of capitalization, punctuation, etc., and to

observe prescribed uniform methods of citing the United States Code, the Statutes at Large, opinions of the Attorney General, the reported cases, etc. The Printing Office has also been requested to make any necessary changes in the matter of capitalization and punctuation (e.g., placing of commas and periods in connection with quotation marks, etc.).

*Recommendation re Publication.* If it is considered that the opinion should be withheld from publication a memorandum embodying such recommendation and addressed to the Attorney General accompanies the opinion. It is prepared by the attorney to whom the opinion was assigned and is signed by the Assistant Solicitor General. It provides on the bottom thereof a place for the Attorney General's indication of approval or disapproval of the recommendation.

If it is considered that the opinion should be published it is accompanied by a letter for the Attorney General's signature and directed to the officer to whom the opinion is addressed, asking whether or not he perceives any objection to publication.

Opinions ordinarily are published, as provided by law (5 U.S.C. § 305), unless they relate to matters deemed confidential or amount to mere practical suggestions or informal advice of little or no value as a precedent.

*Submission to the Attorney General.* The proposed opinion with such recommendation or letter respecting publication is transmitted with the complete file relating to the matter to the Attorney General bearing a printed tag requesting return to this office when acted upon.

When the proposed opinion reaches the Attorney General he subjects it to such consideration and to such revision as he deems proper. It is perhaps a tribute to the care displayed in the preparation of these drafts that they are usually approved and signed by the Attorney General without revision.

*Opinion Returned to Assistant Solicitor General.* If the opinion is signed by the Attorney General it is returned to this division in order that proper entries in our records (i.e., record book in Assistant Solicitor General's office and card index in opinion section) may be made.

*Opinion Transmission to Mail Room.* Immediately after such entries have been made the opinion is transmitted to the mail room for dispatch by messenger to the addressee. The papers accompanying the opinion, together with a carbon copy of the letter, are required by departmental rules to be sent with the opinion to the mail room, where they are properly stamped—indicating the time that the opinion leaves the Department—and thence go to the Division of Records for recording and preparation of the file.

*File Returned by Division of Records.* The file, together with a carbon of the record card, is transmitted by the Division of Records to this division.

*Opinion Files Confidential.* The opinion files are regarded as confidential and there is affixed to each file in the Division of Records a pink label bearing the following legend:

Unpublished letters and memoranda in the opinion files must not be cited or made public without approval by the Attorney General. Questions relating thereto should be handled with the Assistant Solicitor General.

*Additional Verification if Publication Recommended.* If publication of the opinion has been recommended, the file copy of the opinion is now again verified and citations and quotations checked against original sources.

*Syllabi.* Headnotes and title are prepared, and are approved or revised by the Assistant Solicitor General.

*Reference to Other Divisions.* If the opinion affects or is of apparent interest to other divisions or officers of this Department, including the Solicitor General, the file is referred to them for noting and prompt return to this office.

*Response to Letter re Publication.* When response is received from the officer to whom the opinion was addressed regarding publication his recommendation is ordinarily followed as a matter of course. If he objects to publication the opinion usually is not published, although this lies in the discretion of the Attorney General. If he requests that it be withheld temporarily note is made to that effect and the matter followed up by inquiry from time to time until publication.

*Copies for Publicity Section and Law Week.* If the opinion is to be published a carbon copy is now sent to the United States Law Week and another to the Publicity Section of the Attorney General's office.

*Mimeographed Copies.* Mimeographed copies are prepared under the supervision of this division if required by the Publicity Section or if the matter is of such nature that some immediate distribution is desirable or immediate requests for copies appear imminent.

*Copies to Chief Clerk for Printing.* When released for publication a carbon copy of the opinion with title and headnotes is transmitted by memorandum from this division to the Chief Clerk with the request that he arrange for printing and distribution.

*Verification of Proof.* The opinion is printed at the Government Printing Office in pamphlet form. The proof is read and verified against the carbon copy of the opinion in the office of the Chief Clerk, and is referred to this division for approval before being returned to the Printing Office.

*Distribution and Mailing List.* Seven hundred twenty-five copies are ordinarily printed. Approximately 650 copies are distributed to persons on the mailing list, which is kept in the Chief Clerk's Office but subject to supervision of this office—leaving approximately 75 copies on hand to supply future needs and to fill requests from persons (ordinarily officials) who are not upon the mailing list or require copies additional to those ordinarily sent.

A separate mailing list for these opinions is also kept by the Superintendent of Documents at the Government Printing Office, comprising largely private persons

(who pay a small fee), and libraries and other depositaries designated by statutes which relate to official publications generally.

### Bound Volumes and Digests

*Same Type Used.* The type used in printing the pamphlet is kept standing at the Government Printing Office for eventual use in the printing of the bound volumes of the opinions of the Attorney General—with such changes and corrections as may subsequently be found necessary.

*Additions and Corrections.* The printed pamphlet opinion is carefully examined in this office and is verified against the carbon copy of the opinion as an additional precaution against appearance of errors in the bound volume; also at times it appears advisable to indicate some minor change or the addition of a citation or footnote in the bound volume.

*Setting up Type for Bound Volumes.* From time to time copies of the pamphlet opinions with running headlines and with such eliminations, additions and corrections as may be necessary are transmitted by this office to the Government Printing Office for setting up in paged form as they will appear in the bound volume. The frequency with which this is done is dependent in part upon the number of opinions, bearing in mind also that the effect of setting up the type for the bound volume is to make impracticable the obtaining of any additional copies in pamphlet form—an exigency which occasionally arises. Also the temporary withholding of opinions for publication, or delay in obtaining approval of publication by the head of the Department affected, has bearing upon this.

*Opinions Temporarily Withheld from Publication.* An opinion withheld from publication beyond the time when the opinions for that period are set up for the bound volume must be (for reasons of practicability and economy) inserted in the volume out of its ordinary order with respect to time. Formerly such opinions were placed in the volumes as of the approximate time of their release for publication. It has now been determined, however, that such delayed opinions will hereafter be placed at the end of the volume, with proper notations.

*Indices and Digests.* As the printed pamphlet copies of opinions are received from the Government Printing Office they are digested and indexed on cards (in duplicate) and the cards filed in proper alphabetical order for use in printing the index digest in the bound volume.

When the work of preparing the bound volumes, digests, etc., was transferred to this office a little over a year ago it was assigned to Mr. Fowler for supervision and execution with such assistance as should be found necessary and available. Some changes in method and arrangement have been devised and approved.

*Supplement to General Digest.* It is contemplated that a supplement to the general digest (now in course of preparation) will be issued as promptly as possible after Volume 39 is completed, and that thereafter attention will be given to the question of reissuance of the entire digest.

## Unpublished Opinions

All opinions determined to be withheld from publication are carefully examined and if they appear to be worthy of preservation as precedents copies are made and bound with appropriate headnotes and indices for confidential use in this office. This work is being performed by Mr. Arthur Robb, who is on the payroll of the Administrative Division but has been assigned to the supervision of this office for this purpose.

Important memoranda and opinions (intradepartmental) prepared by this office for the assistance of the Attorney General and others, upon questions arising in this Department or otherwise, are similarly preserved, bound and indexed, by Mr. Robb under the supervision of this office. All such items since the establishment of the office of the Assistant Solicitor General (January 1, 1934), and including in addition some such memoranda and opinions prepared previously thereto in the office of the Assistant Attorney General, Admiralty and Civil Division, have been collected and are now in course of preparation for binding and indexing.

## V.

## Procedure in Handling Gifts, Bequests, and Devises

Unconditional gifts and bequests of personal property are accepted by the Secretary of the Treasury and other administrative officers without express statutory authority under a practice which has prevailed, with knowledge of and apparent approval by the Congress, since the earliest days of the government. A few statutes, mostly of recent origin, authorize acceptance of gifts, bequests and devises by particular agencies. There is no general statute, but the enactment of such a statute has recently been recommended by this Department. *See* Dep't File No. 103-01-1.

As cases arise and are brought to the attention of this Department (by other departments of the government, or by United States Attorneys, or executors, or counsel for executors, etc.) the United States Attorneys are instructed by letters or telegrams prepared in this office to enter appearances on behalf of the government to protect its interests. United States Attorneys when first confronted with a will involving a bequest to the government are sometimes at a loss as to how to proceed and it becomes necessary for this office to instruct them, pointing out the applicable principles and practice, and at times to assist them in preparing arguments in support of the government's position. For some typical precedents, see Dep't File Nos. 103-11-1; 103-16-A; 103-9-1; 103-32-2; 103-51-10; 103-51-4.

In connection with gifts inter vivos this Department extends assistance only as requested by the head of the department or agency concerned.

## VI.

### Procedure in Handling Customs Cases

*Appeals.* The United States Customs Court has jurisdiction of cases involving the classification and reappraisement of merchandise imported into the United States. The decisions of the Customs Court are appealable to the Court of Customs and Patent Appeals and may be taken from the latter court to the Supreme Court on a writ of certiorari. These cases are handled by the Assistant Attorney General in charge of the Customs Division located in New York City. In any case where the decision is against the government and where the Assistant Attorney General in charge of the Customs Division is of the opinion that an appeal should be taken, he prepares a recommendation to that effect and transmits it to the Solicitor General.

Such cases are referred by the Solicitor General to the Assistant Solicitor General where they are assigned to an attorney to prepare a recommendation for or against the taking of an appeal. The case is then forwarded to the Solicitor General who finally decides whether an appeal shall be taken. Such cases are briefed and argued by representatives of the office of the Assistant Attorney General in charge of customs matters. Cases wherein the plaintiff takes an appeal are not referred to this office.

*Petitions for Writs of Certiorari.* Petitions for writs of certiorari filed by importers in the Supreme Court are referred to the Customs Division in New York where a tentative brief in opposition is prepared and forwarded to the Solicitor General. These cases are then assigned to the Assistant Solicitor General who revises the briefs and submits them to the Solicitor General before they are sent to the Government Printing Office for printing. In cases wherein the government might desire to petition the Supreme Court for a writ of certiorari, the Customs Division in New York transmits the case to the Solicitor General with a recommendation either for or against the filing of the petition. The Assistant Solicitor General then prepares a recommendation to the Solicitor General who finally decides whether or not a petition shall be filed.

*Constitutional and Treaty Questions.* All cases in the Customs Court wherein there arises a question involving the constitutionality of a statute or the interpretation of a treaty or international agreement are referred to this office for consideration before they are tried. If the case involves a treaty it is referred to the State Department for its views with respect to the defenses to be imposed. If the case involves a constitutional question it is carefully considered here in order that a proper record may be made and all pertinent questions presented to the court in the event the case should reach the Supreme Court of the United States. If the case is an important one, this office actively assists the Assistant Attorney General in charge of customs matters in the preparation of the brief.

## VII.

### Office Procedure and Mechanics

The staff of the office of the Assistant Solicitor General is not sufficiently large to present any substantial problems of administration such as exist in divisions having larger personnel, like the Lands Division, the Tax Division, etc. Therefore, it will be necessary only briefly to indicate the manner in which the more or less mechanical business of the office is carried on.

Care is taken to see that the general departmental orders respecting the handling of files, correspondence, etc. are observed. Particular care is exercised to see that in all official matters, copies of all correspondence, memoranda, etc. go into the general files of the Department, whatever copies may be retained in this office. The required and customary usage in these matters is observed.

*Correspondence—Form.* Where possible and when not in conflict with any general departmental order, undue formality in the form of correspondence is avoided: for instance, in the salutation it is generally preferable to say "Dear Mr. Blank" rather than "Dear Sir" or "Gentlemen"; in closing, similarly, it is generally preferable to use "Sincerely yours," "Cordially yours," etc. rather than "Yours truly," etc.

*Messenger—Library—Supplies.* The library of this office is very small, and it depends primarily upon the main departmental library. The library is managed, as are the office supplies of this office, by its messenger who performs the customary duties of that position in securing books for members of the staff, furnishing them with supplies, receiving and transmitting the mail, memoranda, etc.

*Incoming Matter.* All incoming official matter—mail, memoranda, compromises, etc. (sometimes routed directly from the Attorney General's office, sometimes through the Division of Records, or in the case of intradepartmental memoranda, from the various divisions and bureaus of the Department)—is received in the head office of the Assistant Solicitor General, where it is stamped in as of the date it is received and a written record made in various record books which have been set up for the purpose. After such records have been made, the mail is then routed to the Assistant Solicitor General and by him assigned to the several attorneys in the division.

*Outgoing Matter.* All outgoing letters, memoranda, compromises, etc., in fact all official matter leaving the division, is routed by the attorneys to the head office of the Assistant Solicitor General. A written record is there made indicating the date on which the matter is transferred from the attorney to the Assistant Solicitor General. After being acted on by the Assistant Solicitor General, a further record is made indicating the date on which the matter finally leaves the division. In order that complete information may be available in the office, the practice has been established whereby compromise cases requiring the approval of the Attorney General and all opinions, which of course require his signature, are returned to this

office after being approved and signed by him and a record is made of the date of his approval and signature.

## Office Record Books

*Assignment Book.* On Monday morning of each week a typewritten assignment sheet is made up for each attorney in the division. This sheet shows all official matters pending with each attorney, the date on which assigned to him and their general status. For each succeeding day of the week a pen-written record is kept which shows assignments completed by, and new assignments to, each attorney in the division. In this way a current record of the work being handled by each attorney is available at all times.

*Opinion Book.* The opinion record book contains a separate typewritten sheet for every official request for an opinion of the Attorney General, which, of course, means requests from the President or the head of an executive department of the government. The data kept on each such request is as follows:

1. Department of Justice file number.

2. By whom requested and date of request.

3. Subject matter of the request.

4. Date received in this office.

5. Name of attorney in this division to whom preparation of opinion is assigned and date assigned.

6. Date on which draft of opinion is submitted to Attorney General.

7. Date opinion is signed by the Attorney General.

*Executive Order & Proclamation Book.* The executive order and proclamation record book contains data similar to that kept in the opinion book and is as follows:

1. Department of Justice file number.

2. Executive order number (available after Order is printed in the Federal Register).

3. Subject matter and by whom order is presented.

4. Date received in this office.

5. Name of attorney in this Division to whom assigned and date assigned.

6. Date on which order with proposed letter of transmittal to the President is submitted to Attorney General for approval.

*Compromise Books.* Compromise cases are referred to this office from the several divisions and bureaus in the Department and separate data is kept in record books according to the particular division or bureau from which they emanate. Generally the following information is noted for the records of this office:

1. Title of case.

2. Date received in this office.

3. Whether claim is for or against the government.

4. Amount involved.

5. Amount offered in compromise.

6. Acceptance or rejection of offer by Assistant Solicitor General and date such action taken.

When offers in compromise require final action by the Attorney General upon the recommendation of the Assistant Solicitor General, notation is made of the date on which they are submitted to the Attorney General. When final action has been taken by the Attorney General, the cases are returned to this office where a record is made of his action in the matter and of the date on which he acted. The cases are then returned to the respective divisions or bureaus from which they originated.

*Custom Appeals Book.* As one of the regular assignments of this office is to make recommendations to the Solicitor General as to whether appeals should be taken in customs cases, a record book is maintained containing the following information respecting each case submitted:

1. Title of case.

2. Date received in this office.

3. Date on which appeal expires.

4. Date on which recommendation of Assistant Solicitor General for or against appeal is submitted to Solicitor General.

5. Date on which Solicitor General acts on above recommendation.

6. Date of letter to the Assistant Attorney General, in charge of Customs matters, New York, advising of the Solicitor General's decision in each case.

### Reports to the Attorney General

*Annual.* At the end of each fiscal year an annual report of the work performed by each division and bureau of the Department is submitted to the Attorney General for inclusion in his annual report to the Congress. The report for the division of the Assistant Solicitor General is prepared in narrative form and under headings which show the type and amount of work performed by the office. *See* Annual Report of the Attorney General, 1938, at 26.

*Quarterly.* Commencing with July 1 of each fiscal year quarterly reports are prepared for the Attorney General. These reports are purely statistical in form and are divided into two parts, the first showing, under the proper headings, the number of assignments completed during the year up to and including the date ending the quarter; and the second showing the number of assignments pending as of the date ending the quarter. Such quarterly reports facilitate the preparation of the annual report. (See those heretofore made.)

*Weekly.* A report of completed and pending assignments is submitted to the Attorney General at the close of every week during the year. This report, like the quarterly reports, is divided into two parts, the first showing matters completed during the week; and the second showing matters pending at the end of the week. The data contained in the weekly report is grouped under five main headings, as follows:

1. Executive orders and proclamations.

2. Opinions.

3. Compromises.

4. Special Assignments from the Attorney General.

5. Special Assignments from the Solicitor General.

Every assignment completed during the week is listed under one of the above headings so that by consulting the report the amount and type of work performed by the division for any given week can easily be determined; in the same way, the amount and type of matter pending in the division at the end of any given week can easily be determined. (See those heretofore made.)

GOLDEN W. BELL
*Assistant Solicitor General*

EXHIBIT A

## Statutory Limitation on the Power of the Attorney General to Render Opinions

Section 35 of the Act of September 24, 1789, ch. 20, provides, in part:

> And there shall also be appointed a meet person, learned in the law, to act as attorney-general for the United States, who shall be sworn or affirmed to a faithful execution of his office; whose duty it shall be . . . to give his advice and opinion upon questions of law when required by the President of the United States, or when requested by the heads of any of the departments, touching any matters that may concern their departments . . . .

1 Stat. 73, 92–93.

The provisions of the above statute were brought forward in sections 354 and 356 of the Revised Statutes (2d ed. 1878), 18 Stat. pt. 1, at 60 (repl. vol.), and later in sections 303 and 304 of title 5, U.S. Code.

For more than a hundred years the above-quoted statute has been construed by the Attorneys General as limiting their power to render opinions. In an opinion dated June 12, 1818, Attorney General Wirt said:

> Under this law, which is the only one upon the subject, I do not think myself authorized to give an *official opinion* in any case, except on the call of the President, or some one of the heads of departments; and I should consider myself as transcending the limits of my commission in a very unjustifiable manner, in attempting to attach the weight of *my office* to any opinion not authorized by the law which prescribes my duties.

*Office of Attorney General*, 1 Op. Att'y Gen. 211, 212 (1818).

Again, in an opinion dated September 14, 1821, Mr. Wirt said:

> This act limits me to questions of law propounded by the *President and heads of departments*; . . . no officer should be permitted to stretch his authority and carry the influence of his office beyond the circle which the positive law of the land has drawn around him.

*Office of Attorney General*, 1 Op. Att'y Gen. 492, 492–93 (1821).

Subsequent Attorneys General have generally followed the rule thus laid down by Mr. Wirt. That the Congress has considered this the correct interpretation of the statute is evidenced by the fact that, in 1924, it expressly authorized the Attorney General to render opinions to the Director of the United States Veterans Bureau on

questions of law arising in the administration of the Bureau, Act of June 7, 1924, Pub. L. No. 68-242, § 9, 43 Stat. 607, 610 (codified at 38 U.S.C. § 433), but has otherwise declined to follow recommendations of several Attorneys General to extend the opinion jurisdiction.

Following the rule thus laid down in the early days of the statute the Attorneys General have consistently held that the law does not permit them to render opinions except to the President and to the heads of the departments (including, since 1924, the Director of the United States Veterans Bureau), and to them only upon questions of law which have arisen and are still pending in their respective departments and requiring future determination. They have consistently held that their opinions are limited to such as will aid an administrative officer entitled thereto in determining what administrative action he should take in connection with a particular matter pending and undetermined in his department.

In this connection the Attorneys General have held that the Attorney General "possesses no jurisdiction under the law to revise a conclusion already reached and about which the official presenting the question merely desires my confirmatory opinion." *Jurisdiction of the Attorney General—Certain Cases in Which the Attorney General Will Not Render an Opinion*, 38 Op. Att'y Gen. 149, 150 (1934); *Attorney-General*, 20 Op. Att'y Gen. 440 (1892). In other words, where an officer of the United States authorized to administer a statute has without securing the opinion of the Attorney General adopted thereunder a practice satisfactory to himself, the Attorney General is without authority to question this practice, and will not do so, unless and until it is made to appear that such officer or his successor *entertains some doubt as to the correctness thereof* and for that reason seeks the advice of the Attorney General in connection therewith. Speaking on this subject, Attorney General Butler, in an opinion dated February 12, 1836, said:

> I cannot undertake to give an official opinion on the question proposed to me, without assuming that this office possesses a revisory jurisdiction not conferred upon it by law.

*Duties of Attorney General*, 3 Op. Att'y Gen. 39, 40 (1836).

The Attorneys General have also generally held that under the statutes the Attorney General is not authorized to render opinions to, or for the benefit of, the Congress or its committees. In an opinion dated March 26, 1937, which discusses at some length the Attorney General's authority to render opinions, the present Attorney General called attention to the ruling of his predecessors in this respect, *Rendition of Opinions on Constitutionality of Statutes—Federal Home Loan Bank Act*, 39 Op. Att'y Gen. 11, 12–13 (1937), and in a footnote to the opinion referred to 80 Cong. Rec. 4370–71 (1936), where a list of some of the opinions of prior Attorneys General on the subject will be found, *id.* at 13 n.1.

Not only have Attorneys General declined to render opinions on direct requests of the Congress or its committees, or members thereof, but they have also

considered it beyond their authority to render opinions to administrative officers where it appeared that the purpose for which the opinions were requested was their use by the Congress or committees thereof. On this question Attorney General Mitchell, in an opinion dated April 25, 1932, said, in part:

> Under date of January 28, 1820, the House of Representatives entered an order requesting the opinion of Attorney General Wirt respecting a matter in which the House was interested. In declining to give the opinion the Attorney General, among other things, said:
>
> > The Attorney General is sworn to discharge the duties of his office according to law. To be instrumental in enlarging the sphere of his official duties beyond that which is prescribed by law would, in my opinion, be a violation of this oath. (1 Op. [Att'y Gen.] 336.)
>
> That opinion has stood unquestioned for one hundred and twelve years and has been repeatedly followed in later rulings. Under date of December 17, 1884, Attorney General Brewster felt obliged to decline compliance with a resolution passed by the House of Representatives requesting his opinion on the application of a section of the Revised Statutes (18 Op. [Att'y Gen.] 87). Having failed to obtain the opinion by direct request, the House of Representatives passed another resolution requesting the Postmaster General to ask for the Attorney General's opinion, and the Postmaster General transmitted the request to the Attorney General who again refused to give the opinion on the ground that he had no authority to give it to the House of Representatives and the Postmaster General did not need it on any question pending in his Department.
>
> Under date of February 14, 1929, my immediate predecessor declined the request of the House Committee on Expenditures in the executive departments for an opinion, and on June 3, 1930, I felt obliged to decline an opinion requested by the Judiciary Committee of the Senate.
>
> Congress has accepted this long standing interpretation of the law and has never attempted by law to enlarge the powers or duties of the Attorney General so as to require him to give opinions to either House of Congress or to committees thereof. Having in mind the constitutional separation of the functions of the legislative, executive, and judicial branches of the Government, there has always been a serious question whether the principle of that separation would be violated by a statute attempting to make the Attorney General a legal

adviser of the legislative branch, and as a matter of governmental policy the wisdom of constituting as legal adviser of either House of Congress an official of the executive department, who sits in the President's Cabinet and acts as his legal adviser, has always been open to doubt.

When pending legislation affecting the Department of Justice has been referred to Attorneys General for comment or suggestion, it has been their practice to suggest such legal points as are pertinent and which ought to receive consideration by committees, but that practice has never properly involved any formal legal opinions from Attorneys General and has no resemblance to a request for an opinion as to the effect of an existing statute.

*Request of Senate for Attorney General's Opinion on Railroad Mergers*, 36 Op. Att'y Gen. 532, 534–35 (1932).

The general question of opinions of the Attorney General, their functions, and the practice relating to the rendition thereof are discussed at some length by Cummings and McFarland in *Federal Justice*. For reference to the places where different phases of the question are discussed, *see* Homer Cummings & Carl McFarland, *Federal Justice: Chapters in the History of Justice and the Federal Executive* 571 (1937) (under heading "Opinions of the Attorneys General").

In an opinion to the Secretary of the Treasury dated January 30, 1911, Attorney General Wickersham said in part:

It appears that the questions presented involve the legality of certain orders issued by the Commissioner of Internal Revenue, the purpose of which is to prohibit the reclamation of spirits from such packages in the absence of affirmative proof that such spirits had been properly tax-paid. The papers in the case show that these orders were issued under your direction and that the Commissioner and the Solicitor of Internal Revenue, as well as yourself, are fully satisfied that your action in the premises is correct, the questions referred to being presented for my consideration merely because of the request of counsel for the parties interested.

There are numerous precedents to the effect that the Attorney-General is precluded from rendering opinions under such circumstances. In an opinion of August 17, 1892 (20 Op. [Att'y Gen.] 440), it appeared that the Treasury Department had reached conclusions upon certain questions which had arisen or might arise therein under a statutory provision, and that an opinion was desired as the "correctness of the interpretations and applications of said law." In declining to accede to this request it was said (*id*. at 441–42):

It is required not only that the question must be one arising in the administration of a department, but it must be one which is still pending. A matter which has been considered and decided is not now a "question" upon which the head of a Department may require an opinion of the head of the Department of Justice.

An opinion reported in 3 Op. [Att'y Gen.] 39 likewise decides that the Attorney General does not possess the power to revise the decisions of an executive department, deliberately made and entirely satisfactory to the Secretary thereof.

It appears, moreover, that a proper determination of the questions presented can not be accomplished without considerable difficulty, and that the questions are essentially judicial in their nature. There is also every reason to believe that if an opinion should be rendered sustaining the validity of the orders in question, parties interested would resort to the courts for the purpose of having the matter judicially investigated and determined. That it is not proper for the Attorney-General to express an opinion upon a question which must ultimately be decided by the courts has been settled by numerous and unequivocal precedents (Digest Op. 46–48).

. . . .

Under all the circumstances, it seems clear that it would not be proper to attempt to give you the advice requested.

*Internal Revenue—Reclamation of Alcohol from the Staves of Empty Spirit Packages—Attorney-General, Opinions*, 28 Op. Att'y Gen. 596, 596–97, 598 (1911).

In an opinion to the Administrator of Veterans Affairs dated November 30, 1934, Attorney General Cummings said in part:

It appears from your letter that I am not called upon to give an opinion upon a question of law now pending and undetermined in the Veterans' Administration but am asked to give an opinion upon a question which you have already considered and decided. It has been held by my predecessors that this Department possesses no jurisdiction under the law to revise a conclusion already reached and about which the official presenting the question merely desires my confirmatory opinion, (20 Op. [Att'y Gen.] 440). Furthermore, I am advised that a similar question is now before the United States District Court for the District of Nebraska in the case of *Mrs. Emma Thomas, Administratrix of the Estate of James A. Hakel, deceased v. United*

*States*, involving a claim for insurance benefits under Section 309 of the World War Veterans' Act, as amended. This Department has heretofore followed the practice of declining to render opinions upon questions contemporaneously pending before the courts for determination and which are within their competency to decide.

*Status of Employees Affected by McKellar Proviso in the Emergency Appropriation Act, Fiscal Year 1935*, 38 Op. Att'y Gen. 139, 150 (1934).

In an opinion to the Secretary of the Treasury dated March 3, 1921, Attorney General Palmer said in part:

> It appears that at least the first of the questions submitted by you has been passed upon by Judge Hazel, of the United States District Court for the Western District of New York, and that an appeal from his decision is now pending. The answers to the other questions are necessarily dependent upon the answer to the first. I regret that under these circumstances I can not comply with your request, as it has long been the settled rule of this Department not to render an opinion upon any question whose answer may bring it into conflict with a judicial tribunal, especially while the question is under consideration by the courts.

*Railway Companies—Extra Compensation for Customs Officers—Attorney General's Opinion*, 32 Op. Att'y Gen. 472, 473 (1921) (citing *Attorney-General*, 20 Op. Att'y Gen. 618 (1893); *Attorney-General—Legacy Tax*, 23 Op. Att'y Gen. 221 (1900); *Returning Chinese Laborers—Treasury Regulations*, 23 Op. Att'y Gen. 582, 585 (1901); *Attorney-General—Opinion*, 24 Op. Att'y Gen. 59 (1902); *Attorney-General—Opinion*, 25 Op. Att'y Gen. 369 (1905)).

In an opinion to the Secretary of the Treasury dated September 7, 1900, Attorney General Griggs said:

> It is not the practice of this Department to give an opinion in a matter where the question involved is disputable and is the subject of a pending suit and awaiting judicial determination.

*Attorney-General—Legacy Tax*, 23 Op. Att'y Gen. 221, 221–22 (1900).